■ CROWN IT SERVICES, INC., Appellant, v JANICE KOVAL-OLSEN, Also Known as JANICE KOVAL and as JANICE OLSEN, et al., Respondents. [782 NYS2d 708]—

Order, Supreme Court, New York County (Jane S. Solomon, J.), entered September 5, 2003, which, to the extent appealed from as limited by the briefs, denied plaintiff's motion for summary judgment, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of plaintiff in the amount of $50,000 plus statutory interest from March 4, 2002.

Plaintiff Crown IT Services, Inc. (Crown) is a computer consulting firm. Janice Koval-Olsen and her company Peabody Associates, Ltd. (collectively defendants) were hired by Crown to provide computer consulting services to Crown's clients. On or about August 23, 1999, defendants entered into a Contractor Agreement which contains an anticompetitive covenant with a liquidated damages provision.* The enforceability of this provision is the central issue on appeal.

Beginning in August 1999, defendants worked for Credit Suisse First Boston Corporation, a preexisting client of Crown, for approximately 2½ years. Defendants terminated their services with Crown effective March 1, 2002 because Crown was no longer on Credit Suisse's list of approved vendors and thereaf-

---

* "During the term of this Agreement and any renewals thereof, and for one year after the expiration of the initial and renewal periods, Contractor agrees that it will pay a finder's fee to CROWN if (a) Contractor . . . within a restricted area (i) provides or attempts to provide . . . , directly or indirectly, any services to any client to which Contractor has been introduced or about which Contractor has received information through CROWN or through any client for which Contractor has performed services or to which the Contractor was introduced under this Agreement; . . . The 'restricted area' referred to above is any client location where Contractor provided or was offered an opportunity to provide services . . . The parties agree that the finder's fee shall be paid immediately upon commencement of the services and shall be $50,000.00."

ter entered into an agreement with another consulting firm to provide services for Credit Suisse beginning March 4, 2002.

As a result of defendants' employment relationship with another consulting firm, Crown commenced this action alleging, inter alia, that defendants continued to provide consulting services to Credit Suisse in violation of the terms and conditions of the parties' agreement, and that Crown was therefore entitled to the $50,000 finder's fee. Defendants answered asserting various counterclaims. After joinder of issue, plaintiff moved for summary judgment and defendants moved for, inter alia, summary judgment dismissing the complaint and on their counterclaims. The motion court, among other things, denied plaintiff's motion. The court determined that the covenant was reasonable in time and area and not unduly burdensome because it allowed defendants to work for any entity not introduced to them by Crown. However, the court also found that a factual issue existed as to whether defendants' services were "unique, special or extraordinary" so as to warrant its enforcement. Plaintiff does not challenge on appeal the court's award of summary judgment on defendants' counterclaim for an account stated.

We reverse. In order to be enforceable, an anticompetitive covenant ancillary to an employment agreement must be reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the public, and not unreasonably burdensome to the employee (*see BDO Seidman v Hirshberg*, 93 NY2d 382 [1999]). There is no serious dispute that this clause, which only prohibits defendants from servicing Crown's former clients for one year at the client location, was reasonable in time and area. In addition, the clause is limited to only former clients to which the contractor has been introduced directly or indirectly through Crown.

The only real dispute centers on whether defendants' services were unique or extraordinary such that Crown is entitled to anticompetitive protection. Defendants argue that the court properly denied Crown's motion because it failed to submit any evidence on this issue. We note that where an employee's services are deemed to be unique, special or extraordinary, a court may enforce a restrictive covenant through injunctive relief (*see Reed, Roberts Assoc., Inc. v Strauman*, 40 NY2d 303 [1976]; *Purchasing Assoc., Inc. v Weitz*, 13 NY2d 267 [1963]). Here, however, Crown does not seek injunctive relief, but rather, seeks the distinct remedy of recovering liquidated damages (*see e.g. Karpinski v Ingrasci*, 28 NY2d 45 [1971] [mere inclusion in a covenant of liquidated damages provision does not automatically bar grant of an injunction]).

In any event, an "employer has a legitimate interest in preventing former employees from exploiting or appropriating the goodwill of a client or customer, which had been created and maintained at the employer's expense, to the employer's competitive detriment" (*BDO Seidman*, 93 NY2d at 392). Here, Crown had a preexisting relationship with Credit Suisse. Crown's president averred that during the two years from 1997 to 1999, Crown expended significant time and effort cultivating a business relationship with Credit Suisse. The record shows that defendants enjoyed a close relationship with Credit Suisse and indeed continued to work for Credit Suisse, through another consulting firm, within days of, and for at least nine months following, their severing their employment relationship with Crown. Thus, we find that the court erred in determining that there were issues of fact as to whether Crown met its burden of proving that defendants' services were unique, special or extraordinary.

Defendants argue, for the first time on appeal, that the restrictive covenant is barred by the doctrine of frustration of purpose. Thus, defendants have failed to afford the motion court the opportunity to pass on this claim. In any event, this doctrine is a narrow one which does not apply "unless the frustration is substantial" (*Rockland Dev. Assoc. v Richlou Auto Body, Inc.*, 173 AD2d 690, 691 [1991]). In order to invoke this defense, the frustrated purpose must be so completely the basis of the contract that, as both parties understood, without it, the transaction would have made little sense (*see* Restatement [Second] of Contracts § 265 [1981]). Here, even if, as defendants contend, Crown was no longer an approved vendor for Credit Suisse, the restrictive covenant was nonetheless enforceable. Indeed, the terms of the contract were not contingent upon Crown's status as an approved vendor of its clients.

Accordingly, no triable issues of fact exist that would preclude summary judgment in Crown's favor on the ground that defendants breached the anticompetitive covenant.

Crown further argues that the agreed liquidated damages clause represents the anticipated loss of one year's worth of continued consulting work and that it reflected what Crown would have earned during the one-year period in which defendants provided services to Credit Suisse following their termination of the Contractor Agreement. Defendants maintain that this provision bears no reasonable relation to any loss sustained by Crown and is therefore an unenforceable penalty.

A liquidated damages provision is "an estimate, made by the parties at the time they enter into their agreement, of the extent

of the injury that would be sustained as a result of breach of the agreement" (*Truck Rent-A-Center, Inc. v Puritan Farms 2nd, Inc.*, 41 NY2d 420, 424 [1977]). The parties are free to provide for such an agreement as long as the provision "is neither unconscionable nor contrary to public policy" (*id.*). However, if "the amount fixed is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will not be enforced" (*id.* at 425). On the other hand, such a provision will be sustained if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation (*id.* at 425).

Applying these principles here, we find that the fixed and agreed amount bears a reasonable relationship to the amount of probable or actual harm. Therefore, we find, based on this record, that this liquidated damages clause is not a penalty because it was a reasonable estimate at the time the contract was negotiated and executed (*cf. BDO Seidman*, 93 NY2d at 397). Crown estimated that defendants' services for a former client for one year would be billed in excess of $200,000, of which roughly $50,000 would represent Crown's share. Indeed, defendants submitted invoices for the period from March 2002 through December 2002 totaling approximately $150,000 for work performed for Credit Suisse. Thus, the finder's fee is not "grossly disproportionate" to Crown's share of defendants' billings. Accordingly, the liquidated damages clause is enforceable.

Defendants' numerous challenges to the liquidated damages provision are unavailing. Despite defendants' contrary claim, loss of business is "very difficult[ ] to quantify" (*Willis of N.Y., Inc. v DeFelice*, 299 AD2d 240, 242 [2002]). Furthermore, where a contract contains a valid liquidated damages clause, mitigation is irrelevant (*cf. Musman v Modern Deb, Inc.*, 50 AD2d 761 [1975]; *Boyle v Petrie Stores Corp.*, 136 Misc 2d 380 [1985]). Nor can defendants argue against enforcement of the clause by a claimed disparity in bargaining power. Individual defendant Koval-Olsen was experienced in business and a principal of her own company. Moreover, the record is devoid of any indication that the transaction was anything but one at arm's length, with neither side having the ability to take undue or unfair advantage of the other (*see Wilmington Trust Co. v Aerovias de Mexico, S.A. de C.V.*, 893 F Supp 215 [1995] [applying New York law]). Concur—Tom, J.P., Saxe, Williams, Friedman and Marlow, JJ.