Perella Weinberg Partners LLC v Kramer (2023 NY Slip Op 50501(U))

[*1]

Perella Weinberg Partners LLC v Kramer

2023 NY Slip Op 50501(U)

Decided on May 24, 2023

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 24, 2023
Supreme Court, New York County

Perella Weinberg Partners LLC, PWP MC LP, PWP EQUITY I LP, PERELLA WEINBERG PARTNERS GROUP LP, Plaintiffs,

against
Michael A. Kramer, DERRON S. SLONECKER, JOSHUA S. SCHERER, ADAM W. VEROST, DUCERA PARTNERS LLC, Defendants.

MICHAEL KRAMER, DERRON SLONECKER, JOSHUA SCHERER, ADAM VEROST, Plaintiffs,
against
JOSEPH PERELLA, PETER WEINBERG, KEVIN COFSKY, Defendants.
Index No. 653488/2015

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 009) 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376, 377, 378, 379, 380, 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 403, 404, 405, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 418, 419, 420, 421, 422, 423, 424, 425, 426, 427, 428, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 456, 457, 458, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473, 474, 475, 476, 477, 478, 726, 727, 728, 729, 730, 731, 732, 733, 734, 735, 736, 737, 738, 739, 740, 741, 742, 743, 744, 745, 746, 747, 748, 749, 750, 751, 752, 753, 754, 755, 756, 757, 758, 759, 760, 761, 762, 763, 764, 765, 766, 767, 769, 774, 777, 806, 807 were read on this motion for SUMMARY JUDGMENT(AFTER JOINDER).
The following e-filed documents, listed by NYSCEF document number (Motion 010) 479, 480, 481, 482, 483, 484, 485, 486, 487, 488, 489, 490, 491, 492, 493, 494, 495, 496, 497, 498, 499, 500, 501, 502, 503, 504, 505, 506, 507, 508, 509, 510, 511, 512, 513, 514, 515, 516, 517, 518, 519, 520, 521, 522, 523, 524, 525, 526, 527, 528, 529, 530, 531, 532, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, [*2]557, 558, 559, 560, 561, 562, 563, 564, 565, 566, 567, 568, 569, 570, 571, 572, 573, 574, 575, 576, 577, 578, 579, 580, 581, 582, 583, 584, 585, 586, 587, 588, 589, 590, 591, 592, 593, 594, 595, 596, 597, 598, 599, 600, 601, 602, 603, 604, 605, 606, 607, 608, 609, 610, 611, 612, 613, 614, 615, 616, 617, 618, 619, 620, 621, 622, 623, 624, 625, 626, 627, 628, 629, 630, 631, 632, 633, 634, 635, 636, 637, 638, 639, 640, 641, 642, 643, 644, 645, 646, 647, 648, 649, 650, 651, 652, 653, 654, 655, 656, 657, 658, 659, 660, 661, 662, 663, 664, 665, 666, 667, 668, 669, 670, 671, 672, 673, 674, 675, 676, 677, 678, 679, 680, 682, 683, 684, 685, 686, 687, 688, 689, 690, 691, 692, 693, 694, 695, 696, 697, 698, 699, 700, 701, 702, 703, 704, 705, 706, 707, 708, 709, 710, 711, 712, 713, 714, 715, 716, 717, 718, 719, 720, 721, 722, 723, 724, 725, 770, 771, 772, 775, 778 were read on this motion for SUMMARY JUDGMENT(AFTER JOINDER).
This action arises out of disputes between plaintiffs Perella Weinberg Partners LLC, PWP MC LP, PWP Equity I LP, and Perella Weinberg Partners Group LP (collectively, Plaintiffs or PWP) and defendant Michael Kramer, head of PWP's restructuring group, and defendants Derron Slonecker, Joshua Scherer, and Adam Verost (collectively with Kramer, the Individual Defendants), former members of PWP's restructuring group (Complaint, ¶ 1 [NYSCEF Doc. No. 2]). The parties dispute the nature and circumstances of the Individual Defendants' departure from PWP. It is undisputed that, after their departure, Kramer established the firm Ducera Partners LLC (Ducera, and, together with the Individual Defendants, Defendants), and that the Individual Defendants are all currently partners at Ducera (id., ¶ 79). Plaintiffs assert fourteen causes of action against Defendants: first, for a declaratory judgment that the non-solicitation covenants in their agreements with Plaintiffs are enforceable and that the Individual Defendants were properly terminated for cause; second through seventh, for breach of contract; eighth and ninth, for breach of fiduciary duty and aiding and abetting breach of fiduciary duty; tenth, for breach of the duty of loyalty; eleventh through thirteenth, for tortious interference; fourteenth, for unfair competition (id., ¶¶ 85-152). Defendants filed a Second Amended Answer, Counterclaims, Cross-Claims and Third-Party Complaint (Amended Answer [NYSCEF Doc. No. 182]) against Plaintiffs and against third-party defendants Joseph Perella, Peter Weinberg, and Kevin Cofsky (Third-Party Defendants). In the Amended Answer, Defendants assert eight causes of action against Plaintiffs and the Third-Party Defendants: first and second, for breach of contract; third, for breach of the implied covenant of good faith and fair dealing; fourth, for a declaratory judgment that the Individual Defendants were terminated without cause and that the restrictive covenants in their agreements with Plaintiffs are unenforceable; fifth, for a declaratory judgment that the restrictive covenants in the Individual Defendants' agreements with Plaintiffs are void; sixth, for intentional interference with prospective economic advantage; seventh, for defamation; eighth for breach of fiduciary duty (Amended Answer, ¶¶ 224-308). 
Defendants now move for summary judgment (Ds.' Notice of Motion [NYSCEF Doc. No. 347]). Defendants move "or an order (i) dismissing with prejudice all of Plaintiff's causes of action; (ii) granting summary judgment in Defendants' favor on their first, second, fourth and fifth causes of action; and (iii) granting such other and further relief as the Court deems just and proper" (id., at 2). Plaintiffs and Third-Party Defendants also move for summary judgment (Ps.' [*3]Notice of Motion [NYSCEF Doc. No. 479])[FN1]
. Plaintiffs and Third-Party Defendants move for an order "granting the PWP Parties' Motion for Summary Judgment in its entirety, both with respect to PWP's affirmative claims . . . as well as Defendants' . . . counterclaims and cross-claims . . ." (id., at 2). 
 Background
Undisputed Facts
The following facts are undisputed.[FN2]

PWP is an independent global financial services firm founded in 2006 by Perella and Weinberg (Ps.' Rule 19-a Statement, ¶ 1).[FN3]
By agreement effective January 1, 2007 (the Framework Agreement), PWP acquired certain assets and liabilities of Kramer Capital Partners LLC (Kramer Capital), a firm started by Kramer, effective January 1, 2007 (id., ¶ 3; see Belelieu Aff. In Supp., exh. 172 [Framework Agreement] [NYSCEF Doc. No. 652]).[FN4]
The Framework Agreement sets forth the assets of Kramer Capital included in and excluded from the sale, including contracts of Kramer Capital transferred to PWP (Framework Agreement, sch. 1.2-1.3). The Framework Agreement also provides that Kramer will be admitted as a member of PWP LLC and a partner of PWP MC LLP, that Slonecker will be admitted as a partner of PWP Equity I LP, and that offers of employment will be extended to certain employees, including Kevin Cofsky, Mark Davis, and Adam Verost (id., at 1, sch. 1.4). 
Kramer and Slonecker joined PWP as partners (Ps.' Rule 19-a Statement, ¶ 8). PWP also hired Cofsky, Davis, and Verost in or around January 2007 (Ds.' Rule 19-a Statement, ¶ 8). Scherer joined as a partner in 2011 (id., ¶ 14). Kramer was admitted as a member of PWP LLC and a Limited Partner of PWP MC LP, "which is governed by the PWP MC LP Agreement" (the PWP MC Agreement) (id., ¶¶ 10, 12). Slonecker and Scherer were admitted as Limited Partners [*4]of PWP Equity I LP, "and were parties to the PWP Equity I LP Agreement" (the PWP Equity I Agreement, and, together with the PWP MC Agreement, the LP Agreements or the Partnership Agreements) (id., ¶ 14). Verost joined as a Managing Director of PWP and was party to a Confidentiality and Related Covenants Agreement (the Verost Agreement, and, together with the LP Agreements, the PWP Agreements) (id., ¶¶ 17, 30). The PWP Agreements contain, among other things, restrictive covenants concerning the non-solicitation of employees and the non-solicitation of clients (Ps.' Rule 19-a Statement, ¶¶ 19-20). Kramer and Slonecker also signed PWP's Deferred Compensation Agreement (DCA) and Deferred Compensation Amount Election forms (id., ¶¶ 32-33). The DCA states that compensation shall be forfeited upon termination by PWP for Cause, as defined by the DCA (id., ¶ 34). 
The parties do not dispute that a meeting was held in Kramer's home on January 11, 2015, and that the Individual Defendants, Cofsky, and non-parties Bradley Meyer and Agnes Tang were all present (Ds.' Rule 19-a Statement, ¶ 71). Cofsky, Meyer, and Tang were all Managing Directors in the Restructuring Group when the meeting took place (id.). In late 2014 and early 2015, Kramer met with Weinberg and Steel to discuss his future at PWP (id., ¶ 87). In February 2015, Kramer retained Proskauer Rose LLP (Proskauer) to assist in his discussions with PWP (id., ¶¶ 92-93). On February 15, 2015, Cofsky participated in a conference call with PWP's General Counsel, Vlad Shendelman, its Head of Human Resources, Kyle Sugarman, and its outside counsel Weil, Gotshal & Manges LLP (Weil) (id., ¶ 101). On February 16, 2015, PWP emailed a resolution to a subset of PWP LLC's members (the Voting Members) to terminate Kramer, Slonecker, and Scherer for cause (the Resolution), and that each of the Voting Members approved the Resolution that day (id., ¶¶ 112-114). The Individual Defendants all received notice on the evening of February 16, 2015 that they had been terminated for cause for soliciting employees to leave the firm (id., ¶ 115).
Disputed Facts
As noted above, the parties dispute the factual history that gives rise to this action. Defendants assert that tensions developed between Kramer and Weinberg, leading to PWP hiring a relationship counselor for the two of them (Ds.' Rule 19-a Statement, ¶ 35). They further assert that Weinberg inquired as to the vested equity to which Kramer was entitled if Kramer left the firm without cause and suggested to PWP's CEO, Robert Steel, that Kramer's equity allocation should be reduced (id., ¶¶ 37-39). Defendants assert that Weinberg emailed Steel and Perella about removing Kramer from all management and that Weinberg later emailed Steel and Perella to inform them he had informed Kramer that he did not want Kramer in any management role (id., ¶¶ 42-48). Defendants assert that this constituted a demotion, that the demotion included a reduction or elimination of Kramer's management authority, and that others at PWP viewed the change in Kramer's roles as a demotion (id., ¶¶ 50-57).
Defendants assert that Kramer's demotion had a ripple effect throughout the Restructuring Group, that members of the Restructuring Group were dissatisfied and demoralized, and that they began separately discussing their own career options (Ds.' Rule 19-a Statement, ¶¶ 58-68). In 2015, non-parties Meyer and Tang allegedly requested a meeting with Kramer to address their concerns (id., ¶ 69). At the January 11, 2015 meeting, Defendants assert, most of the time was dedicated to the Managing Directors' concerns and Kramer indicated he had made no decision for his own future and told the others that there were great opportunities for them at PWP (id., ¶¶ 72-75). Defendants further assert that someone asked about a hypothetical new firm, but that Kramer encouraged the others not to disregard the [*5]benefits of a large firm, stated he would only join a new firm if he had majority ownership interest, and never sent anything about a hypothetical new firm (id., ¶¶ 76-80). Defendants also assert that none of the other Individual Defendants solicited any other member of the Restructuring Group at the meeting or saw any documents concerning a new firm prior to this litigation (id., ¶¶ 81-85).
Defendants assert that, on the February 15, 2015 conference call, Cofsky was asked to describe how Kramer and his team violated their agreements, and that Cofsky told them there was no solicitation and no scheme to leave PWP (Ds.' Rule 19-a Statement, ¶¶ 103-106). Defendants further assert, however, that less than 25 minutes after the call, Steel approved Weinberg's plan to terminate the Individual Defendants for improper solicitation and that a draft of Kramer's termination letter was circulated that afternoon (id., ¶¶ 107-108). Defendants allege that Shendelman claimed that he and Weil investigated Cofsky's claims, that Weil claimed it did no investigating, and that PWP's Chief Compliance Officer and Head of Human Resources claimed that they were not asked to investigate Verost (id., ¶¶ 109-111). Defendants further allege that the Voting Members never met to discuss the Resolution before approving it (id., ¶ 113).
Plaintiffs rebut Defendants' assertions. Plaintiffs assert that PWP hired Ted Bililies to help Kramer, not to serve as a relationship counselor, and that the record demonstrates tensions between Kramer and non-party Andrew Bednar, co-head of PWP's U.S. Advisory business with Kramer (Ps.' Rule 19-a Response Statement, ¶ 35). Plaintiffs also assert that Weinberg inquired into Kramer's vested equity without mentioning Kramer's leaving the firm and that Weinberg suggested to Steel that his equity should be raised, not that Kramer's should be reduced (id., ¶¶ 37-39). Plaintiffs acknowledge that Weinberg emailed Steel and Perella about removing Kramer from management positions, but assert that the communications also noted that Weinberg wanted Kramer to stay, to devote time to clients and revenue production, and did not want him to assume more leadership until he worked better with his peers (id., ¶¶ 42-48). Plaintiffs deny that removing Kramer from leadership constituted a demotion, asserting that such changes are done frequently, and that Kramer maintained leadership roles and management authority until his termination (id., ¶¶ 50-57).
Plaintiffs deny that Kramer's alleged demotion made members of the Restructuring Group dissatisfied and demoralized, allege that unhappiness from the group's leadership, including Kramer and Slonecker, was translated into the team's discontent, and argue that Defendants' assertions are self-serving and lack contemporaneous evidence (Ps.' Rule 19-a Response Statement, ¶¶ 58-68). 

 The Instant Action
Defendants initially commenced an action against Plaintiffs and Third-Party Defendants by filing a summons with notice under a different index number. Two days after the complaint in the present action was filed, Defendants filed a complaint in the other action. Defendants subsequently discontinued the other action and filed their claims as counterclaims and third-party claims in their original answer (Answer [NYSCEF Doc. No. 13]). On a prior motion, defendants Kramer and Slonecker moved for partial summary judgment on all claims affecting their rights to deferred compensation (Notice of Motion, Mot. Seq. No. 001 [NYSCEF Doc. No. 16]). Plaintiff and Third-Party Defendants also moved to dismiss all of Defendants' causes of action (Notice of Motion, Mot. Seq. No. 002 [NYSCEF Doc. No. 35]). 
The two motions were consolidated for disposition. The court denied the motion for partial summary judgment and granted the motion for dismissal to the extent of dismissing the Answer "without prejudice with leave to replead in accordance with this decision" and dismissed with prejudice certain of the claims, including "the claim for breach of the Offer Letters, fraudulent inducement of the DCA Extension Forms and all other fraud claims . . . , equitable estoppel . . ., the NYLL claims, breach of fiduciary duty, the claim for a declaratory judgment that Kramer was constructively discharged . . . and an accounting" (Decision and Order [Kornreich, J.] NYSCEF Doc. No. 92]). That decision was affirmed as modified by the Appellate Division, which held that the "breach of fiduciary duty claim may proceed, but only as asserted by Kramer, because he was the only one harmed by the alleged pre-termination misconduct, and only as against Perella Weinberg Partners LLC—the general partner of PWP MC LP, the entity of which Kramer was a limited partner—and Perella and Weinberg, its control persons" (Remittitur [NYSCEF Doc. No. 146]). After the Appellate Division issued its ruling, Defendants filed the Amended Answer to include its eighth cause of action for breach of fiduciary duty.

 Standard
The standards for summary judgment are well settled. The movant must tender evidence, by proof in admissible form, to establish the cause of action "sufficiently to warrant the court as a matter of law in directing judgment" (CPLR 3212[b]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). "Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). Once such proof has been offered, to defeat summary judgment "the opposing party must 'show facts sufficient to require a trial of any issue of fact' (CPLR 3212, subd. [b])" (Zuckerman, 49 NY2d at 562). "On a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party" (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012] [internal quotation marks and citation omitted]). "[I]ssue-finding, rather than issue-determination, is key. Issues of credibility in particular are to be resolved at trial, not by summary judgment" (Shapiro v Boulevard Hous. Corp., 70 AD3d 474, 475 [1st Dept 2010], citing S.J. Capelin Assoc., Inc. v Globe Mfg. Corp., 34 NY2d 338, 341 [1974] [other internal citations omitted]).

Discussion
Declaratory Judgment: Enforceability of Non-Solicitation Clauses
The court will first address the parties' causes of action for declaratory judgment concerning the enforceability of the non-solicitation clauses in the PWP Agreements. The PWP Agreements contain non-solicitation clauses barring the solicitation of both employees and clients of PWP. Defendants seek a declaratory judgment against Plaintiffs that the restrictive covenants in the PWP Agreements "are unenforceable insofar as [Plaintiffs] seek to prohibit [Defendants][FN5]
from communicating with persons or entities with which they had relationships [*6]prior to their tenure at PWP" (Amended Answer, ¶ 268). Defendants also seek a declaratory judgment against Plaintiffs that "each of these restrictive covenants is void or voidable as a matter of law" (id., ¶ 273). Plaintiffs seek a declaratory judgment against the Individual Defendants that "the non-solicitation covenants in the PWP Agreements are valid and enforceable. . ." (Complaint, ¶ 92). 
Defendants argue that the "non-solicitation provisions are unenforceable both as written and as applied to the undisputed facts of this case" (Ds.' Memo. In Supp., at 23 [NYSCEF Doc. No. 478])[FN6]
. They argue that a restrictive covenant is only enforceable if it "(1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public" (id., at 24, citing BDO Seidman v Hirshberg, 93 NY2d 382, 388-389 [1999] [emphasis omitted]). Defendants argue that "PWP's employee non-solicitation provisions fail each prong of this test" (id., at 25). Plaintiffs argue that, under the same three-prong test, "the Non-Solicitation Provisions are valid and enforceable on their face and as applied to the facts of this case" (Ps.' Memo. In Opp., at 22 [NYSCEF Doc. No. 767])[FN7]
.
As an initial matter, the parties dispute which body of law should govern the non-solicitation agreements. Defendants argue that New York law should apply (Ds.' Memo. In Supp., at 23), while Plaintiffs argue that Delaware law should apply (Ps.' Memo. In Opp., at 12). Defendants assert that the Verost Agreement is governed by New York law (Ds.' Memo. In Supp., at 23). They also assert that, although the PWP MC Agreement and PWP Equity I Agreement apply Delaware law, "PWP's U.S. headquarters is in New York and the Individual Defendant worked in New York for their entire tenure with PWP[,]" so New York law may therefore be applied (id., at 23-24). Plaintiffs acknowledge that "Verost's contract with PWP is governed by New York law," but observe that the PWP MC Agreement and PWP Equity I Agreement "select Delaware law" (Ps.' Memo. In Opp., at 12). They argue that "the Court of Appeals has forbidden any conflicts analysis where the parties include a choice-of-law provision in their contract" and, therefore, Delaware law governs those agreements (id., citing Ministers & Missionaries Benefit Bd. V Snow, 26 NY3d 466, 474-76 [2015] [internal quotation marks omitted]). The parties agree, however, that, in determining the enforceability of restrictive covenants, New York law and Delaware law are substantively similar (Ds.' Memo. In Supp., at 24; Ps.' Memo. In Opp., at 13 n 9). The court therefore need not, and does not, determine the [*7]choice of law issue, as the parties agree that the relevant law is substantively similar, and the court's own research has not revealed any material difference between New York law and Delaware law on this issue. The court will accordingly apply the law of New York (see TBA Global, LLC v Proscenium Events, LLC, 114 AD3d 571, 572 [1st Dept 2014] [finding that, where Delaware law and New York law did not differ significantly and the application of New York law would not make a material difference to the outcome, the court may apply the law of New York, the forum state]).
Under New York law, a restrictive covenant "is reasonable only if it: (1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public. A violation of any prong renders the covenant invalid" (BDO Seidman v Hirshberg, 93 NY2d at 388-389 [internal citations and emphasis omitted]). New York requires "that courts strictly construe restrictive covenants and balance the interests of the employer, employee and general public" (Brown & Brown, Inc. v Johnson, 25 NY3d 364, 370 [2015]).
The PWP Agreements all contain virtually identical operative language in the provisions for the non-solicitation of employees and the provisions for the non-solicitation of clients. The provisions for the non-solicitation of employees state: 
"Each Limited Partner agrees that, during the period in which such Limited Partner is an Active Limited Partner (including during such Limited Partner's Notice Period) and for a period of one year thereafter, such Limited Partner will not, directly or indirectly in any capacity (including through any person, corporation, partnership or other business Entity of any kind) hire or solicit, recruit, induce, entice, influence, or encourage any Firm employee (or any Limited Partner) to leave the Firm or become hired or engaged by another firm"
(Kramer Aff., exh. 4 [PWP MC Agreement], § 14.0504 [NYSCEF Doc. No. 352]; see Slonecker Aff., exh. 2 [PWP Equity I Agreement], § 14.04 [NYSCEF Doc. No. 366]; Verost Aff., exh. 1 [Verost Agreement], § 5 [NYSCEF Doc. No. 374]). The provisions for the non-solicitation of clients state:
Each Limited Partner agrees that, during the period in which such Limited Partner is an Active Limited Partner (including during such Limited Partner's Notice Period) and for a period of 180 days thereafter, such Limited Partner will not, directly or indirectly in any capacity (including through any person, corporation, partnership or other business Entity of any kind), solicit or entice away or in any manner attempt to persuade any client or customer or prospective client or customer, of the Firm (i) to discontinue his, her or its relationship or prospective relationship with the Firm or (ii) to otherwise provide his, her or its business to any person, corporation, partnership or other business Entity which engages in any line of business in which the Firm is engaged (other than the Firm); provided, however, that a Limited Partner who has been involuntarily terminated other than for Cause shall not be bound by the provisions of this Section 14.02"
(PWP MC Agreement, § 14.02 [emphasis in original]; see PWP Equity I Agreement, § 14.02; Verost Agreement, § 3).
The first prong in determining whether a restrictive covenant is reasonable requires that the restrictive covenant be no greater than required for the protection of the legitimate interest of [*8]the employer. Defendants argue that the non-solicitation provisions do not protect any legitimate purpose of PWP (Ds.' Memo. In Supp., at 25). Defendants also argue that the services they provided were not unique, and that Plaintiffs stated that Defendants' services were not unique (id.). Defendants further argue that the speed with which PWP approved termination of the Individual Defendants' employment and PWP's history of declining to enforce restrictive covenants necessitates a finding that the covenants do not protect a legitimate interest (id., at 26-27). Plaintiffs argue that "the Individual Defendants and those they recruited to join Ducera were key personnel in PWP's Restructuring Group with specialized knowledge and skills, as well as access to PWP's confidential information" (P.'s Memo. In Opp., at 15). They also argue that the Individual Defendants "developed valuable relationships with PWP's clients at PWP's expense" (id.). Plaintiffs further argue that the non-solicitation provisions "are enforceable to protect PWP's legitimate interest in its clients' goodwill, given PWP's substantial investment in the Individual Defendants' client relationships" (id., at 16). Plaintiffs argue that PWP terminated the Individual Defendants "to prevent further misconduct and to mitigate damage to PWP" and that they did so with clear evidence of the Individual Defendants' misconduct (id., at 17). Plaintiffs also argue that the circumstances in which they have previously declined to enforce the restrictive covenants have substantially differed from the one at hand here (id.).
"An employer's legitimate interest can include preventing an employee from misappropriating trade secrets or confidential customer lists or keeping an employee with unique or extraordinary skills from joining a competitor to the employer's detriment" (1 Model Management, LLC v Kavoussi, 82 AD3d 502, 503 [1st Dept 2011]). Restrictive covenants are enforceable where they are "not more extensive than reasonably necessary to protect [an employer's] legitimate interest in enjoying the assets and goodwill it had acquired . . ." (Weiser LLP v Coopersmith, 51 AD3d 583, 584 [1st Dept 2008]). An employer "has a legitimate interest in preventing former employees from exploiting or appropriating the goodwill of a client or customer, which had been created and maintained at the employer's expense, to the employer's competitive detriment" (Crown IT Services, Inc. v Koval-Olsen, 11 AD3d 263, 265 [1st Dept 2004], citing BDO Seidman v Hirshberg, 93 NY2d at 392).
An employee's services are unique or irreplaceable where "although the technical services he performed could have been done by others, his special value was in his relationships with [clients], cultivated partially through the use of his expense account while employed by plaintiff" (Henson Group, Inc. v Stacy, 66 AD3d 611, 612 [1st Dept 2009]; see Crown IT Services, Inc. v Koval-Olsen, 11 AD3d at 265 [finding that "defendants' services were unique, special or extraordinary" where they had developed a close relationship with a client that had a pre-existing relationship with plaintiff]). 
New York caselaw on provisions prohibiting the solicitation of employees is scant (see e.g. Admarketplace Inc. v Salzman, 2014 WL 1278504 [NY Sup Ct, March 28, 2014, Kornreich, J]; Penton Learning Systems, LLC v Defense Strategies Institute Group, 2014 WL 3885954 [NY Sup Ct, July 28, 2014, Schweitzer, J]). Defendants argue that New York law requires an "enhanced showing" that the "allegedly solicited employee acquired and cultivated personal relationships with those clients using the employer's resources; regarding the importance of those relationships; and of a substantial risk that such clients would follow such employee if he or she left" (Ds.' Reply Memo., at 9 [NYSCEF Doc. No. 769] [internal quotation marks, emphasis, and bullet points omitted]). This test appears to come from the Western District of New York's holding in Renaissance Nutrition, Inc. v Jarrett, 2012 WL 42171 [WD NY, January 9, 2012, 08-[*9]CV-800S]). This test, however, has not been adopted by New York State courts, and the court declines to adopt it here. This court, rather, is persuaded by other New York caselaw, citing the Western District of New York case, which finds that, in cases concerning non-solicitation of employees, "the same standards governing the enforceability of noncompete provisions apply" (Penton Learning Systems, LLC v Defense Strategies Institute Group, 2014 WL 3885954 at *28) but that "non-recruitment clauses are inherently more reasonable and less restrictive than non-compete clauses" (OTG Management, LLC v Konstantinidis, 40 Misc 3d 617, 621 [NY Sup Ct, June 7, 2013, Kornreich, J] [internal quotation marks omitted], citing Renaissance Nutrition, Inc. v Jarrett, 2012 WL 42171, at *5 ["a non-recruitment clause, as opposed to a non-compete clause, does not infringe on an employee's ability to engage in an occupation, but merely infringes on his ability to recruit former co-workers to engage in competitive businesses"]). In other words, the standards that apply to the non-solicitation of employees provision in the PWP Agreements is the same standard as set forth in BDO Seidman v Hirshberg, but the provision for the non-solicitation of employees inherently is more likely to be found reasonable and less likely to infringe on the interests of the employee.
As an initial matter, the court rejects Defendants' argument that BDO Seidman v Hirshberg limits an employer's legitimate interests to protection of trade secrets or confidential customer lists and protection from competition from an employee whose services are unique or extraordinary (Ds.' Memo. In Supp., at 25; see BDO Seidman v Hirshberg, 93 NY2d at 389). As noted above, the Court of Appeals in that case also stated that preventing exploitation or appropriation of client goodwill, created, and maintained at an employer's expense, is a legitimate interest. Plaintiffs assert that the Individual Defendants were "key personnel in PWP's Restructuring Group with specialized knowledge and skills" and that they "developed valuable relationships with PWP's clients at PWP's expense (Ps.' Memo. In Opp., at 15). Plaintiffs have thus identified legitimate interests that may be protected by the provisions in the PWP Agreements for the non-solicitation of employees and for the non-solicitation of clients.
The parties dispute whether the Individual Defendants and those they allegedly recruited to join Ducera constitute employees whose services are unique or extraordinary, such that the non-solicitation of employees provision of the PWP Agreements is required for the protection of PWP's legitimate interest. In support of its contention that the services of such employees are not unique or extraordinary, Defendants cite statements from PWP saying that PWP "demoted Kramer on the grounds that he was 'destructive' to PWP, announced that it could hire 'three Mike Kramers' and was better off without him, and boasted to third parties that the terminations allowed it to 'c[o]me out ahead economically'" (Ds.' Memo. In Supp., at 25-26; see Ds.' Rule 19-a Statement, ¶¶ 141, 163). They also argue that PWP's "willingness to demote or force out the Individual Defendants refutes any claim that it regarded them as 'unique or extraordinary'" (Ds.' Memo. In Supp., at 26). Plaintiffs argue that the Individual Defendants and those they allegedly recruited "were key personnel in PWP's Restructuring Group with specialized knowledge and skills . . ." (Ps.' Memo. In Opp., at 15). They also argue that those employees "developed valuable relationships with PWP's clients at PWP's expense" (id.). Plaintiffs cite statements from PWP that they allege "show that PWP viewed Kramer as a valuable contact for PWP's clients" (id., at 16; see Aff. of Deana Davidian, Counsel for Defendants [Davidian Aff. In [*10]Supp.][FN8]
, exh. 49, at 2 [NYSCEF Doc. No. 425] [email from Weinberg stating "I want [Kramer] to devote all his time to working with clients and producing revenues"]; see also Davidian Aff., exh. 51 [NYSCEF Doc. No. 427] [email from Weinberg stating "I very much like working with [Kramer] on clients and like many of his PWP ideas"]). Plaintiffs also assert that Kramer was never demoted (Ps.' Memo. In Opp., at 16 n 14). 
Defendants rely on Fewer v GFI Group Inc., 2014 WL 664197 (NY Sup Ct, Feb. 21, 2014, Sherwood, J.), aff'd as modified 124 AD3d 457 (1st Dept 2015) for the proposition that the Individual Defendants cannot be regarded as unique or extraordinary because PWP was willing to demote them. In that case, plaintiff signed an Employment Agreement to be head of defendants' North American business and was subsequently demoted to head of only the North American Credit and Credit Derivatives business, losing responsibility for all other divisions (id.)[FN9]
The Appellate Division found that the demotion constituted a material breach of his employment agreement and held that "[a]lthough the employment agreement acknowledged the uniqueness of plaintiff's services, that acknowledgment was made in connection with plaintiff's acceptance of a position he no longer held at the time of his resignation" (Fewer v GFI Group Inc., 124 AD3d, at 458). The Appellate Division found that defendants had no legitimate business interest in restricting plaintiff from working for a competitor, but found an issue of fact as to whether they had a legitimate business interest in preventing plaintiff from soliciting former coworkers (id.). 
In the instant action, Kramer joined PWP as "one of twelve members of PWP LLC" and as "a Limited Partner of PWP MC LP" (Ds.' Rule 19-a Statement, ¶¶ 10, 12). While the parties dispute exactly what management role came with those memberships (see Ps.' Rule 19-a Response Statement, ¶ 10), they don't dispute what roles Kramer signed employment agreements for. The parties also agree that Kramer held various leadership roles during his tenure at PWP (see Ds.' Rule 19-a Statement, ¶ 13; Ps.' Rule 19-a Response Statement, ¶ 13). Plaintiffs cite various statements by Weinberg that he wanted to remove Kramer from all management roles (Ds.' Rule 19-a Statement, ¶¶ 42-51). Plaintiffs dispute these statements as incomplete and misleading (Ps.' Rule 19-a Response Statement, ¶¶ 42-51). Defendants also cite Kramer's removal from various leadership positions; Plaintiffs admit, asserting that various appointments and removals happened to Kramer and others (Ds.' Rule 19-a Statement, ¶ 54; Ps.' Rule 19-a Response Statement, ¶ 54). Nothing in evidence, however, suggests that Kramer was demoted from the position for which he signed employment agreements, unlike the plaintiff in Fewer v GFI Group Inc. The court accordingly cannot find that Kramer was demoted, such that the restrictive covenants do not apply to him. Nor can the court make such a finding for any of the other Individual Defendants, as no evidence of demotion has been offered.
In support of their contention that the Individual Defendants had specialized knowledge and skills and that they had developed valuable relationships with clients at PWP's expense, Plaintiffs cite various spreadsheets that contain, among other things, records of the Individual Defendants' assignments to and expense accounts for various clients, their compensation from PWP at various junctures, and an "Engagement and Prospect Summary" of client responsibilities [*11](see Aff. of Christopher Belelieu, Counsel for Plaintiffs [Belelieu Aff. In Opp.][FN10]
, exhs. 28-29, 31-32; Belelieu Aff. In Supp., exh. 108). These exhibits show that the Individual Defendants and the employees of PWP allegedly solicited had vast client connections and that these connections were cultivated using PWP's resources. These exhibits also show that the Individual Defendants and the employees allegedly solicited constitute a large portion of PWP's Restructuring Group. To solicit all of these employees to take part in a competing firm would necessarily lead to a loss of client goodwill for PWP. As noted above, a provision for the non-solicitation of employees is more reasonable and infringes less on the interests of employees. The court accordingly finds that PWP has demonstrated a legitimate interest in preventing the solicitation of the Individual Defendants and the employees allegedly solicited in the matter at hand.
Defendants argue that "the fact that PWP has historically declined to enforce this covenant in virtually identical circumstances undermines any claim that it is required to protect a legitimate business interest" (Ds.' Memo. In Supp., at 27). In support of this argument, Defendants assert that "at least five former PWP partners . . . retained counsel to negotiate collective departures and were permitted to 'lift out' their practices — exactly what the Individual Defendants are (wrongly) accused of attempting here" (id.). Plaintiffs argue that "PWP has never faced 'virtually identical circumstances' during its 15-year existence—i.e., a secret conspiracy to form a competing firm consisting of an entire PWP practice group" (Ps.' Memo. In Opp., at 17 [emphasis omitted]). Plaintiffs also argue that "while Kramer disclosed his own potential departure to PWP's leadership, he never disclosed his illicit scheme to start a competing firm with the other Individual Defendants and Restructuring Group members" (id., at 18). 
As discussed above, the parties dispute many of the facts surrounding the termination of the Individual Defendants. The court is persuaded, however, that the undisputed facts establish that the circumstances here are not virtually identical to prior PWP teams lifting out their practices. Defendants acknowledge other teams "retained counsel to negotiate collective departures . . ." (Ds.' Rule 19-a Statement, ¶ 94 [NYSCEF Doc. No. 477]). The Restructuring Group never retained counsel to negotiate a collective departure. Defendants assert rather that Kramer, with his counsel, Proskauer Rose LLP (Proskauer), "engaged in discussions with PWP and PWP MC concerning the terms and conditions of his continued employment and, potentially, his separation from PWP" (id., ¶ 93 [internal quotation marks and emphasis omitted]). They also assert that PWP's General Counsel "confirmed that the scope of PWP's discussions with Kramer would include not only Kramer's potential departure from PWP, but also the possibility that he may be persuaded to stay at PWP or enter into some form of affiliation with PWP" (id., ¶ 100 [internal quotation marks omitted]). It is undisputed that there was no negotiation for collective departure and no lift out of the Restructuring Group. PWP's willingness to not enforce the restrictive covenants under different circumstances, particularly where there was negotiation between the parties on their departure, does not show that such covenants do not protect a legitimate business interest. The caselaw cited by Defendants, none of which is binding on this court, does not require a different finding. In Estee Lauder Cos. Inc. [*12]v Batra, 430 F.Supp.2d 158, 181-82 (SD NY 2006), the Court found that, because plaintiff had offered reductions in time for its non-compete agreements to employees leaving under the same circumstances as defendant, including defendant himself the first time he left, a similar reduction was appropriate. In Surgidev Corp. v Eye Technology, Inc., 648 F.Supp. 661, 697-98 (D. Minn 1986), the court found that it would be inequitable to enforce a non-compete agreement where plaintiff admitted that it had never before attempted to enforce such an agreement. Both of these cases are inapposite to the matter at hand.
Defendants also argue that the speed with which PWP approved the plan to terminate the Individual Defendants confirms the absence of a legitimate interest (id., at 26). The facts surrounding the termination of the Individual Defendants are disputed. Defendants wholly fail, however, to show how the alleged speed and lack of investigation in terminating the Individual Defendants confirms the absence of a legitimate interest. Nor do they cite any case law that such a showing would confirm the lack of a legitimate interest. This argument is accordingly rejected. The court finds that the restrictive covenants at issue past the first prong of the reasonableness test.
The second prong to determine whether a restrictive covenant is reasonable requires that the provision not impose undue hardship on the employee. Defendants argue that the phrasing of the provision for the non-solicitation of employees "goes far beyond any accepted definition of solicitation" (Ds.' Memo. In Supp., at 28). They argue that Plaintiffs interpret that language as "barring everything from merely responding to co-worker inquiries about one's options, to listening to colleagues air complaints about their pay, to being unknowingly named on a spreadsheet prepared by others" (id.). They argue that this "extraordinarily broad restraint 'imposes an undue hardship' on employees . . . and is thus unenforceable as a matter of law" (id.). Plaintiffs argue that "courts have routinely enforced non-solicitation clauses substantially similar to those here" (Ps.' Memo. In Opp., at 18). They also argue that Defendants' argument is disingenuous, because Ducera "implemented an LLC Agreement containing non-solicitation provisions stating that members may not, for one year, 'directly or indirectly,' 'hire or solicit, or encourage any other person to hire or solicit' a Ducera employee" (id., at 19; see Belelieu Aff. In Supp., exh. 13, § 11.02 [Ducera LLC Agreement]). Plaintiffs further argue that these provisions "do not unduly burden Individual Defendants because they do not infringe on an employee's ability to engage in an occupation" (Ps.' Memo. In Opp., at 19 [internal quotation marks and citation omitted]).
The court does not find that the non-solicitation provisions create undue hardship on employees of PWP, including the Individual Defendants. Defendants make no argument against the length of the non-solicitation period, nor do they argue that such provisions might impact their ability to make a living. Defendants argue, rather, that the non-solicitation provisions, among other things, "impermissibly prohibit employees from ever complaining about their jobs or discussing future employment options" (Ds.' Memo. In Supp., at 27). Defendants rely on a case from the Southern District of New York, in which the Court refused to enforce a non-solicitation provision, finding that "the covenant is thus nothing short of a contractual gag rule on employee complaints . . ." (in re Document Technologies Litigation, 275 F.Supp.3d 454, 468 [SD NY 2017]). In that case, plaintiff-employers acknowledged that "the non-solicitation provision prohibits any speech that 'encourages' or 'induces' an employee to terminate his or her employment, from direct solicitations to such banal statements as an employer is a 'mess' and that an employee 'would be able to find other gainful employment without an issue'" (id., 467-[*13]68). The court does not find that the language of the non-solicitation provisions creates undue hardship, and the second prong of the reasonableness test is therefore satisfied.
The final prong in the test for reasonableness of restrictive covenants is that such covenants must not be injurious to the public. Defendants argue that, in analyzing this prong, courts must "take account of any diminution in competition likely to result from slowing down the dissemination of ideas and of any impairment of the function of the market in shifting manpower to areas of greatest productivity" (Ds.' Memo. In Supp., at 29, quoting in re Document Technologies Litigation, 275 F.Supp.3d at 468). They also argue that the public interest supports "the free flow of information concerning alternative employment" particularly where "the allegedly solicited employee is already considering departing the firm" (Ds.' Memo. In Supp., at 29 [internal quotation marks, citation, and emphasis omitted]). Plaintiffs argue that the contemporaneous evidence does not show that the Individual Defendants were already considering leaving the firm (Ps.' Memo. In Opp., at 21). They further argue that "by that time, Kramer had already recruited other Restructuring Group members to join 'NewCo'" (id., at 22). Plaintiffs also argue that the caselaw does not support Defendants' argument that "a defendant is exempt from a non-solicitation clause simply because the solicited employees were 'considering departing from the firm'" (id.). The three prongs all support a finding that the non-solicitation clauses are enforceable, and Plaintiffs are therefore entitled to summary judgment on their first cause of action for a declaratory judgment and dismissing Defendants' fourth and fifth counterclaims solely to the extent of declaring the restrictive covenants are valid. To the extent the first cause of action and fourth and fifth counterclaims seek a declaration that the Individual Defendants were or were not properly terminated, that determination is discussed below. 
Breach of Contract: Non-Solicitation Clauses; For Cause Termination
The court will next address the causes of action for breach of contract for the alleged breach of the non-solicitation clauses and the Individual Defendants for-cause terminations. This issue has already been addressed by the Appellate Division on appeal of this Court's (Kornreich, J.) Decision and Order dated July 19, 2016 (Perella Weinberg Partners, LLC v Kramer, 2016 WL 3906073 [Sup Ct, NY County 2016, Kornreich, J.]). On appeal, the Appellate Division held: "Here, the issue of defendants' alleged misconduct by violating the non-solicitation and noncompete provisions of the DCA and breaching their duty of loyalty as alleged in the complaint, which, if proven, would unquestionably constitute a termination for cause under the DCA, remains an issue of fact to be determined by the jury at trial" (Perella Weinberg Partners, LLC v Kramer, 153 AD3d 443, 445 [1st Dept 2017]). Although additional discovery was taken since the Appellate Division issued its decision, none of the parties adduce sufficient evidence to demonstrate the absence of material issues of fact requiring trial. Specifically, issues of fact remain as to exactly what conduct Individual Defendants undertook while still employed at PWP and during the time they were bound by restrictive covenants. The evidence as to such conduct is in large part dependent on witness testimony, and such testimony must be properly weighed by the finder of fact. Because factual issues remain, summary judgment is denied with respect to Plaintiffs' second through seventh causes of action and Defendants' second counterclaim.
Breach of Contract: Deferred Compensation
Defendants' counterclaim for breach of contract for failure to pay deferred compensation is dependent on whether or not the Individual Defendants were properly terminated for violating their restrictive covenants. As discussed above, that determination cannot be made on the record [*14]before the court and must be decided by the finder of fact at trial. Therefore, summary judgment must be denied with respect to Defendants' first counterclaim.
Breach of Fiduciary Duty
The court must also deny summary judgment as to the causes of action and counterclaim for breach of fiduciary duty and aiding and abetting breach of fiduciary duty. Plaintiffs' causes of action for breach of fiduciary duty are predicated on largely the same conduct that underlies their causes of action for breach of contract, namely that defendants caused the mass departure of substantially all of the Restructuring Group and solicited PWP's clients while still employed at PWP. Although similar factual allegations underly the breach of fiduciary duty claims and the breach of contract claims, the legal theories are distinct and therefore the claims are not duplicative. However, the breach of fiduciary duty claims cannot be determined at this stage for the same reasons that the breach of contract claims cannot be determined. Neither side has demonstrated that there are no material facts requiring trial with respect to the conduct underlying the breach of fiduciary duty claims. Summary judgment must therefore be denied with respect to Plaintiffs' eighth and ninth causes of action and Defendants' eighth counterclaim.
Breach of the Duty of Loyalty, Breach of the Implied Covenant
The claims underlying the cause of action for breach of the duty of loyalty and the counterclaim for breach of the implied covenant of good faith and fair dealing are the same as those underlying the claims for breach of contract. Plaintiffs allege that Defendants breached the duty of loyalty by subverting or appropriating PWP's business opportunities by soliciting clients. Defendants allege that Plaintiffs breached the implied covenant by terminating the Individual Defendants allegedly for cause and by conspiring to manufacture allegations giving rise to improper for cause termination. For the same reasons as above, these claims cannot be decided on the record before the court. Summary judgment must therefore be denied as to Plaintiffs' tenth cause of action and Defendants' third counterclaim. 
Tortious Interference, Intentional Interference, Unfair Competition
Summary judgment must also be denied with respect to the tortious interference and intentional interference claims. Plaintiffs allege that the Individual Defendants tortiously and intentionally interfered with PWP's Employment and Partnership Agreements and with PWP's business relationships. As with the breach of contract claims and the breach of fiduciary duty claims, these claims are undergirded by the claims that the Individual Defendants solicited both employees and clients of PWP in violation of the restrictive covenants. For the same reasons as above, summary judgment must be denied with respect to these claims because issues of material fact remain requiring trial.
The claim for unfair competition is also not properly resolved at this stage because it is dependent on whether Ducera was created improperly to compete with PWP. The propriety of the Defendants' creation of Ducera again depends on whether their conduct violated the restrictive covenants imposed upon them. This cannot be decided on the record before the court. Summary judgment is therefore denied with respect to Plaintiffs' eleventh through fourteenth causes of action and Defendants' sixth cause of action.
Defamation
Defendants' defamation counterclaim is premised on statements made by Plaintiffs that the Individual Defendants violated their Partnership and Employment Agreements and that the Individual Defendants breached Plaintiffs' trust and agreements. In other words, the alleged [*15]defamation is premised on whether the Individual Defendants' termination for cause was proper. If it is ultimately determined that their termination was proper, the allegedly defamatory statements would be true and truth would be an absolute defense to the defamation counterclaim. If their termination for cause was not proper, a finder of fact may determine that such statements were defamatory. Summary judgment is therefore not appropriate as to Defendants' seventh counterclaim.
Accordingly, it is hereby
ORDERED that Plaintiffs' motion for summary judgment (motion seq. no. 010) is granted to the extent of finding that the restrictive covenants in the PWP Agreements are enforceable, and is otherwise denied; and it is further
ORDERED that Defendants' motion for summary judgment (motion seq. no. 009) is denied.
DATE 05/24/2023
ROBERT R. REED, J.S.C.

Footnotes

Footnote 1:Plaintiffs and Third-Party Defendants move together for summary judgment. For the sake of clarity and simplicity, however, the motion and relevant documents will be cited as Plaintiffs' motion and documents.
Footnote 2:Pursuant to Commercial Division Rule 19-a, on a motion for summary judgment, the moving party may submit a statement of material facts as to which it contends there is no genuine issue to be tried, and the opposing party may submit a response. Herein, Defendants' Rule 19-a Statement and Plaintiff's Rule 19-a Response Statement are for motion sequence number 009; Plaintiffs' Rule 19-a Statement and Defendants' Rule 19-a Response Statement are for motion sequence number 010.
Footnote 3:For the sake of brevity, the court will only cite to the parties' Rule 19-a Response Statements for disputed facts; citations for undisputed facts may be found in the Rule 19-a Response Statements at the same paragraph cited in the opposing parties' Rule 19-a Statements.
Footnote 4:While the parties dispute whether PWP "acquired" Kramer Capital, they do not dispute that the Framework Agreement is the governing document (Ps.' Rule 19-a Statement, ¶ 12; Ds.' Rule 19-a Response Statement, ¶ 12).
Footnote 5:In the Amended Answer, Defendants refer to themselves as plaintiffs and refer to Plaintiffs as defendants. For the sake of clarity in this decision, quotations from the Amended Answer used herein will be altered to refer to the parties as Defendants or Plaintiffs as defined in this decision, with any alterations denoted by brackets.
Footnote 6:Defendants' Memorandum in Support, Plaintiffs' Memorandum in Opposition, and Defendants' Reply Memorandum are for motion sequence number 009; Plaintiffs' Memorandum in Support, Defendants' Memorandum in Opposition, and Plaintiffs' Reply Memorandum are for motion sequence number 010.
Footnote 7:In support of its own motion for summary judgment on its cause of action for a declaratory judgment, Plaintiffs simply argue that "[i]f the Court holds that the Individual Defendants breached their contractual obligations to PWP and forfeited their equity and deferred compensation, PWP should also prevail on its declaratory judgment claim" (P.'s Memo. In Supp., at 27 n 9 [NYSCEF Doc. No. 680]). 

Footnote 8:The Davidian Affirmation in Support is for motion sequence 009 and the Davidian Affirmation in Opposition is for motion sequence 010.

Footnote 9:This case is reported without page numbers.

Footnote 10:The Belelieu Affirmation in Opposition is for motion sequence 009 and the Belelieu Affirmation in Support is for motion sequence 010.